UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

v.                                                     Case No. 8:05-cv-1076-T-24-TBM

HKW TRADING LLC et al.,

       Defendants.
_____/

## **ORDER**

This cause comes before the Court on the Receiver's Motion to (1) Approve Determination of Claims, (2) Pool Receivership Assets and Liabilities, (3) Approve Plan of Distribution and Interim Distribution, and (4) Establish Dispute Procedure. (Doc. No. 299). Zelda Waxenberg and the Zelda Waxenberg Family Trust (collectively referred to as "Waxenberg") have filed a response in opposition (Doc. No. 300), to which the Receiver has filed a reply (Doc. No. 304). This Court previously ruled on part of this motion, approving the Receiver's determination of all claims, except for Waxenberg's claim. (Doc. No. 305). The Court held a hearing on July 16, 2009 to address the issue of whether to approve the Receiver's determination of Waxenberg's claim. Thereafter, additional briefing was submitted. (Doc. No. 311, 312, 314, 317). As explained below, the Court finds that Waxenberg's claim will be allowed and paid as an administrative expense.

## **I. Background**

This case has been pending for over four years, and the Court will not reiterate the extensive history of this case, except as necessary to explain the Court's rulings. This case arose

as a result of a Ponzi scheme carried out by Howard Waxenberg. The Receiver was appointed in order to marshal the assets of the Receivership entities for the benefit of the defrauded investors. The Receiver has resolved all of the ancillary litigation, and the remaining issues in the instant motion consist of the Receiver's requests that the Court do the following: (1) approve the Receiver's determination of Waxenberg's claim, (2) direct that the Receivership entities' assets and liabilities be pooled into a single consolidated estate, (3) approve the proposed plan of distribution and interim distribution, and (4) approve the proposed dispute resolution procedure.

## II. Waxenberg's Claim

Waxenberg's claim resulted from litigation over life insurance proceeds generated by the death of Zelda Waxenberg's husband, Howard Waxenberg. Specifically, the Receiver and Waxenberg disputed the ownership of such proceeds, which resulted in the life insurance company filing an interpleader action on March 5, 2007, naming both the Receiver and Waxenberg as defendants.[1] During the interpleader action, the Receiver filed a cross-claim against Waxenberg, in which the Receiver sought a judgment declaring the Receivership's interest in the insurance proceeds based on his contention that some of the premiums were paid with proceeds from the Ponzi scheme.

Thereafter, on September 20, 2007, Waxenberg made an offer of judgment to the Receiver under Florida Statute § 768.79, which the Receiver did not accept. However, the Receiver voluntarily dismissed, without prejudice, his cross-claim on January 30, 2008 and did not object to Waxenberg's motion for distribution of the life insurance proceeds. After Waxenberg received a judgment for the life insurance proceeds, she moved for attorneys' fees

---

[1] M.D. Fla. Case No.: 8:07-cv-401-T-27-TGW

under Florida's offer of judgment statute. The Court in the interpleader action granted Waxenberg's motion for attorneys' fees to the extent that she argued entitlement to such fees.[2] The Court in the interpleader action has not yet determined the amount of attorneys' fees to be awarded.

In the instant case, Waxenberg's claim consists of a claim for the attorneys' fees that will be awarded in the interpleader action that resulted from the Receiver's failure to accept her offer of judgment. In its prior order, this Court rejected the Receiver's argument that Waxenberg's claim should be denied. (Doc. No. 305). The Receiver also argues that if the Court allows Waxenberg's claim, then her claim should be subordinated and treated as a claim of a general creditor. In response, Waxenberg argues that her claim is entitled to administrative priority, and thus, it should be paid prior to the payment of the claims of the defrauded investors.

Currently, the total money on hand and due to the Receiver is $10,844,983.09. (Doc. No. 316, Ex. 1, p. 2). Under the Receiver's proposed plan of distribution, which gives priority to the defrauded investors' claims over Waxenberg's claim, the defrauded investors would receive approximately 22% of the amount of their allowed claims. As a result, Waxenberg would receive nothing, because there is not enough money to fully pay the claims of the defrauded investors, which would be paid prior to her claim.

However, if the Court accepted Waxenberg's argument that her claim should be allowed as an administrative expense, her claim would reduce the amount of money available to pay the claims of the defrauded investors. While the amount of fees and costs to be awarded to Waxenberg in the interpleader action has not yet been decided, Waxenberg is seeking fees and

---

[2]Doc. No. 106 in the interpleader action

costs of $532,418.75.[3] Therefore, if the Court in the interpleader action awards the requested amount, and if her claim is paid before the defrauded investors' claims, then Waxenberg's claim would reduce the money available to pay the defrauded investors' claims by almost 5%.

Accordingly, the issues currently before the Court relating to Waxenberg's claim are: (1) whether Waxenberg's claim is an administrative claim entitled to priority, and (2) if so, should the priority of payment for Waxenberg's claim change based on equitable considerations. Accordingly, the Court will analyze each issue.

### A.  The Court's Power When Sitting in Equity

District courts have "broad powers and wide discretion to determine relief in an equity receivership." SEC v. Elliott, 953 F.2d 1560, 1566 (11th Cir. 1992). "This discretion derives from the inherent powers of an equity court to fashion relief." Id. The "court's 'broad powers and wide discretion' extend to allocating the priority of distributions from the receivership estate." Quilling v. Trade Partners, Inc., 2007 WL 107669, at *3 (W.D. Mich. Jan. 9, 2007)(quoting In re Indian Motorcycle Litigation, 307 B.R. 7, 16 (D. Mass. Bankr. 2004)). "In equity, remedies to which claimants might be entitled to under other law may be suspended if such a measure is consistent with treating all claimants fairly." SEC v. Credit Bancorp, Ltd., 2000 WL 1752979, at *28 (S.D.N.Y. 2000).

### B.  Priority of Claims

The Receiver argues that Waxenberg's claim should be treated as a claim of a general creditor. In response, Waxenberg argues that her claim is entitled to administrative priority, and thus, it should be paid prior to the payment of the claims of the defrauded investors.

---

[3]Doc. No. 107 in the interpleader action

The parties do not dispute the following recitation regarding the priority of payments from an SEC receivership: According to Ralph Ewing Clark's often cited Treatise on the Law and Practice of Receivers, 3d ed. (1959), the priority of payment from a receivership is as follows: Payment of court costs, receiver's fees, and receiver's counsel's fees are the highest priority for payment. See id. at §637, p. 1052. Expenses incurred to preserve the receivership property take the next priority, followed by costs of realization (such as the costs of collection or the costs of selling receivership property). See id. at § 637, p. 1053. After these administrative claims are paid, claims against the receivership are paid. See id. at § 667, p. 1198. Payment to claimants whose property was unlawfully taken from them is given a higher priority than payment to the general creditors. See id. at § 662.1(a), p. 1174; at § 667, p. 1198.

At the hearing, the parties agreed that there was not any authority that addressed the specific issue of whether an attorneys' fees award imposed against a receiver due to a rejected offer of judgment is classified as an administrative claim against the estate in an SEC receivership case. However, the Court agrees with Waxenberg that the Florida Supreme Court case of Teague v. Estate of Hopkins, 709 So. 2d 1373 (Fla. 1998), is instructive.

In Teague, the court found that attorneys' fees awarded against a personal representative pursuant to Florida's offer of judgment statute constituted an expense of administering the probate estate under the Florida Probate Code's provisions addressing the priority of payments for claims against a probate estate. See id. at 1375. Specifically, the Teague court stated:

> Special priority must be given to payment of costs and expenses that facilitate the administration of an estate. The fees at issue here were incurred because the personal representative brought an action against Teague in the course of an effort to administer the estate. The personal representative rejected an offer of judgment tendered by Teague to resolve the action. Because the attorney's fees here would not have been incurred had it not been for the affirmative action of the personal

5

> representative and because the personal representative rejected the offer of judgment, the fees deserve and are entitled to inclusion in Class 1 costs and expenses of administration.
>
> \* \* \*
>
> Where the original claim was made by the personal representative for the substantial benefit of the estate, then the award of both costs and attorney's fees against the estate are expenses of administration of the estate.

Id. at 1374, 1375.

In the instant case, the attorneys' fee award resulted from the Receiver's attempt to benefit the estate by asserting a claim for the insurance policy proceeds. Had the Receiver not voluntarily dismissed his cross-claim in the interpleader action, he may have been able to show that the estate was entitled to some of the insurance policy proceeds, which would have increased the assets of the estate. As such, since the litigation that led to the attorneys' fee award was pursued by the Receiver in an attempt to benefit the estate, such fees are properly classified as an administrative claim against the estate.

### C. Equitable Considerations

Administrative claims are given priority over the claims of defrauded investors. However, the Receiver argues that if the Court determines that Waxenberg's claim is an administrative claim, the Court should subordinate her claim to the claims of the defrauded investors based on equitable considerations. After careful consideration of the equities in this case, the Court finds that it is not appropriate to subordinate Waxenberg's claim.[4]

---

[4]This Court notes that at the hearing, Waxenberg argued that equitable subordination does not apply in this case. This Court, however, is not considering the principle of equitable subordination as used by bankruptcy courts pursuant to 11 U.S.C. § 510, which, in general, requires a showing of inequitable conduct by the claimant whose claim is being subordinated. Instead, this Court is considering the exercise of its equitable powers to determine a fair and just result based on the specific equities in this case.

This Court notes that "[t]he whole purpose of the SEC proceeding is to remedy violations of the securities laws for the benefit of investors." Marion v. TDI, Inc., 2006 WL 3742747, at *2 (E.D. Pa. Dec. 14, 2006). The Court is not unmindful that the actions taken by the Receiver that led to the award of attorneys' fees against the Receivership were done with the proper motive and intentions. In this case, investors were defrauded out of millions of dollars, and the Receiver believed that some of the insurance policy premiums were paid with these funds. As such, consistent with his duty to attempt to maximize the assets of the estate, the Receiver asserted a claim to a portion of the policy proceeds in the interpleader action. While there was never a finding as to whether any investor funds were used to pay the policy premiums, and if so, how much, this Court notes that the Court in the interpleader action specifically found that "the Receiver had a non-frivolous factual and legal basis for his claim." (Doc. No. 106, p. 15 in the interpleader action).

Furthermore, this Court notes that this is not a situation where the Receiver lost after the Court considered the merits of his cross-claim in the interpleader action. Instead, on January 28, 2008, the Receiver was forced to re-evaluate his efforts in the interpleader action, as the magistrate judge assigned to the ancillary cases[5] recommended that a substantial portion of the Receiver's claims in the ancillary litigation be dismissed.[6] As a result, on January 30, 2008, the Receiver voluntarily dismissed his cross-claim in the interpleader action after determining that his efforts would be more beneficial to the estate if fully directed towards the ancillary litigation.

---

[5]As of January 28, 2008, there were 65 ancillary cases pending.

[6]A copy of this order can be found at Doc. No. 79 in M.D. Fla. Case No.: 8:05-cv-1856-T-27-TBM.

Admittedly, in hindsight, acceptance of Waxenberg's offer of judgment would have been more beneficial to the estate than his voluntary dismissal of the cross-claim, but such hindsight was not available at the time the offer was made.

However, despite the fact that these considerations support a conclusion that it is unfair to penalize the defrauded investors by allowing the estate to pay Waxenberg's claim (which consists solely of a sanction against the Receivership for failing to accept her offer of judgment in the interpleader case) ahead of their claims, the Court finds that the equities do not compel another option. While the Receiver may have acted reasonably in failing to accept Waxenberg's offer of judgment in the interpleader case (based on the facts and circumstances known at that time), such a consideration is of no consequence when determining whether Waxenberg is actually *entitled* to an award of attorneys' fees under Florida's offer of judgment statute. See Sarkis v. Allstate Ins. Co., 863 So. 2d 210, 221 (Fla. 2003). Furthermore, the Court in the interpleader action will have an opportunity to consider the reasonableness of the Receiver's actions when determining the amount of attorneys' fees to be awarded, as Florida's offer of judgment statute sets forth six factors for a court to consider when determining the amount of fees to be awarded. See Fla. Stat. § 768.79(7)(b); TGI Friday's Inc. v. Dvorak, 663 So. 2d 606, 613 (Fla. 1995)(stating that at least some of the factors in Florida's offer of judgment statute "bear on the question of whether the offer or demand for judgment was unreasonably rejected" and noting that a court could justifiably reduce the attorneys' fee that is awarded based on such considerations).

If this Court granted the Receiver's request and subordinated Waxenberg's claim, such would essentially equate to this Court choosing not to pay the attorneys' fee award in the

interpleader action (due to the limited funds in the receivership estate), and this Court would be disregarding Florida law that gives Waxenberg the right to such fees. While this Court recognizes that "[i]n equity, remedies to which claimants might be entitled to under other law may be suspended if such a measure is consistent with treating all claimants fairly," Credit Bancorp, 2000 WL 1752979, at *28, this Court concludes that the subordination of Waxenberg's claim is not proper and equitable under the circumstances.[7]

This Court sits in equity and must make sure that the distribution of the limited funds in the estate is fair, just, and reasonable. However, while subordination of Waxenberg's claim would eliminate the unfairness to the defrauded investors caused by the priority status of her claim, such subordination would unfairly deny Waxenberg attorneys' fees that she is entitled to under Florida's offer of judgment statute.

The Court has not ignored the Receiver's argument that Waxenberg has indirectly benefitted from the Ponzi scheme due to her marriage to Howard Waxenberg. In fact, this Court believes that common sense dictates such a conclusion. However, as there is no evidence before this Court that Ms. Waxenberg participated in the fraud and/or *knowingly* benefitted from it, this Court finds it unfair to penalize her for being married to Howard Waxenberg by denying her attorneys' fees that she is entitled to under Florida's offer of judgment statute. Furthermore, the lack of evidence regarding Ms. Waxenberg participation in the fraud and/or her *knowingly* benefitting from it, combined with the fact that there are no findings as to whether any investor

---

[7]Receivership cases in which a court denies a remedy based on equitable considerations often involve the issue of whether to use a pro rata distribution or a tracing method when determining the appropriate form of relief for defrauded investors' claims. See, e.g., Elliot, 953 F.2d at 1569-70.

9

funds were actually used to pay the policy premiums, and if so, how much, leads this Court to the conclusion that it would be inequitable to deny Waxenberg the attorneys' fee award that she is entitled to under Florida's offer of judgment statute.[8]  To hold otherwise would mean that Ms. Waxenberg not only lost her husband, but she also had to pay attorneys' fees that were unnecessarily incurred  (according to Florida's offer of judgment statute) in order to obtain the life insurance proceeds that resulted from his death.

Thus, the Court finds that a consideration of the equities in this case does not support the Receiver's request that Waxenberg's claim be subordinated.  As such, the Court finds that Waxenberg's claim will be allowed and paid as an administrative expense.

### D.  Waxenberg's Request for Attorneys' Fees

In her response to the instant motion, Waxenberg also requests that this Court award her attorneys' fees for litigating her claim in this case.  In support of her request, she cites Frosti v. Creel, 979 So. 2d 912, 917 (Fla. 2008), which holds that the right to attorneys' fees under Florida's offer of judgment statute applies to fees incurred on appeal.  The Court denies this request.

The litigation in this case is not an appeal of the order entered in the interpleader action finding that Waxenberg is entitled to attorneys' fees under Florida's offer of judgment statute.  The interpleader action resolved the issue of *entitlement* to attorneys' fees under Florida's offer of judgment statute, and the litigation in this case involves the issue of *payment*.  Waxenberg conceded this at the hearing on her motion for attorneys' fees in the interpleader action, when the

---

[8]This Court is not inclined to hold a mini-trial to determine whether any investor funds were actually used to pay the policy premiums, and if so, how much.  The interpleader action was the proper forum for the resolution of those issues.

following exchange occurred:

> [Waxenberg's counsel]: . . . [O]nce we get the order from this court . . . we take the judgment from here, go to Judge Bucklew and then she would make a determination as to how the assets of the receivership estate pays [i]t.
>
> THE COURT: It's not relitigated, it's simply enforced against the estate.
>
> [Waxenberg's counsel]: Correct.

(Doc. No. 300, p. 40). Accordingly, the Court denies Waxenberg's request for attorneys' fees relating to her litigation in this case.

## III. Remaining Issues

The remaining issues in the instant motion consist of the Receiver's requests that the Court do the following: (1) direct that the Receivership entities' assets and liabilities be pooled into a single consolidated estate, (2) approve the proposed plan of distribution and interim distribution, and (3) approve the proposed dispute resolution procedure. No opposition as to this portion of the motion has been filed, and as such, it is deemed unopposed. Accordingly, the Court grants the Receiver's motion as to these three remaining issues.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that the Court rules on the remaining issues in the Receiver's Motion (Doc. No. 299) as follows: The Court **DENIES** the motion to the extent that the Receiver requests that the Court subordinate Waxenberg's claim to the claims of the defrauded investors. The Court finds that Waxenberg's claim will be allowed and paid as an administrative expense.

The Court **GRANTS** the motion as to the remaining issues: The Court directs that all assets and liabilities of the Receivership Entities be consolidated for all purposes. The Court approves the plan of distribution as set forth in the Receiver's motion and authorizes a first

11

interim distribution in the total amount of $8 million as set forth in the motion. The Court approves the proposed dispute resolution procedure set forth in the Receiver's motion.

**DONE AND ORDERED** at Tampa, Florida, this 14th day of August, 2009.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge